**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWINA RANCE and WESTCHESTER RESIDENTIAL OPPORTUNITIES, INC.,<br><br>                           Plaintiffs<br><br>- against -<br><br>JEFFERSON VILLAGE CONDOMINIUM NO. 5,  and MCGRATH MANAGEMENT SERVICES INC.<br>                           Defendants | 18 Civ. 6923<br><br>**COMPLAINT**<br><br><br><br>**JURY DEMAND** |

Plaintiffs, by their attorney, James E. Bahamonde, Esq., of the law firm of James E. Bahamonde, PC, and for their complaint against Defendants respectfully allege:

## STATEMENT OF CLAIMS

1.      This complaint filed by Plaintiffs EDWINA RANCE and WESTCHESTER RESIDENTIAL OPPORTUNITIES, INC., seek equitable and injunctive relief and monetary damages for housing and disability discrimination against Defendants for their violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (hereinafter "FHA"), New York State Human Rights Law, N.Y. Executive Law § 296, *et seq*., and Westchester County Fair Housing Law, Westchester County Human Rights Laws § 700 *et seq*.

2.      Instead of complying with decades old, well-settled law, Defendants have willingly chosen not to follow prevailing housing discrimination law. Instead, Defendants have abused their respective positions in order to interfere, coerce, intimidate, and discriminate against Ms. Rance – an individual with a mental impairment – on the basis of her disability and request for reasonable accommodation. Additionally, Defendants have made unlawful statements.

3.      Moreover, Defendants make the extraordinary claim that they are exempt from

1

prevailing housing discrimination laws. Thus, Defendants demand that Plaintiff Edwina Rance's request for reasonable accommodation be subject to the condominium association's bylaws, and in doing so, implicitly contend that these supersede the U.S. Constitution, federal and State laws, the collective body of jurisprudence produced by the courts, and local ordinances.

4.      Plaintiffs seek a temporary restraining order, preliminary injunction, declaratory judgment, permanent injunction, and compensatory and punitive damages for Defendants' discrimination.

5.      Plaintiffs seek punitive damages against each Defendant for their reckless and/or callous indifference to their rights under the Fair Housing Act, and New York State Executive Law, and Westchester County Human Rights Law.

## JURISDICTION AND VENUE

6.      That at all times hereinafter mentioned, Plaintiff EDWINA RANCE is now, and at all times mentioned in this complaint, a resident of Yorktown Heights, New York.

7.      Venue is proper in this Court because the real property where the events occurred exists in this county.

8.      Venue is proper in this court because Plaintiffs and Defendants are residents of Westchester County.

9.      Venue is proper in this Court because the principal office of Defendants Jefferson Village Condominium No. 5 and McGrath Management Services, Inc. are located in this County.

10.     Plaintiffs invoke the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

11.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights

under the Fair Housing Act.

12.     The Court has supplemental jurisdiction over Plaintiffs' State and County law claims pursuant to 28 U.S.C. § 1367(a).

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

## PARTIES

14.     Plaintiff EDWINA RANCE is a resident of Westchester County, New York and a citizen of the United States.

15.     Plaintiff WESTCHESTER RESIDENTIAL OPPORTUNITIES, INC. ("WRO") is a private, nonprofit fair housing organization incorporated under the laws of the State of New York with its principal place of business in White Plains in the Southern District of New York.

16.     WRO is the only private nonprofit Fair Housing Agency located in Westchester County and approved by the US Department of Housing and Urban Development ("HUD") to conduct fair housing investigations and enforcement.

17.     The mission of WRO is to promote equal, affordable and accessible housing opportunities for all residents in its region, including Westchester County.

18.     In fulfilling its mission, WRO offers various fair housing workshops developed to educate the disabled community as well as the general public about their respective rights and responsibilities.

19.     WRO responds to complaints of housing discrimination by investigating, counseling, educating, negotiating, mediating, and, in some instances, prosecutes claims of discrimination on behalf of clients.

20.     WRO's effort to promote equal access to housing through counseling, investigation and education have been frustrated by Defendants because the organization has expended its limited resources in assisting Ms. Rance in dealing with Defendants' unlawful housing practices. This has limited WRO from engaging in other opportunities to provide counseling, training, and assistance.

21.     In responding to Ms. Rance's claim of housing discrimination, WRO has devoted its resources to investigate her claim of housing discrimination; provided her with  counseling; researched federal, state, and local housing discrimination laws; communicated with McGrath Management Services, Inc., to advise them of the federal, state, and local housing laws prohibiting disability discrimination and failure to provide reasonable accommodation; held staff meetings concerning Ms. Rance's predicament; conducted fair housing testing, and kept a log and record of the foregoing events.

22.     Defendant JEFFERSON VILLAGE CONDOMINIUM NO. 5 ("JVC No. 5") is a domestic condominium organized under the Condominium Act of the State of New York located at Molly Pitcher Lane, Yorktown, County of Westchester.

23.     Defendant JVC No. 5 has designated the Secretary of State as agent upon whom process against it may be served.

24.     Defendant JVC No. 5 is governed by a Board of Managers ("condominium board") elected by the condominium unit owners.

25.     Defendant MCGRATH MANAGEMENT SERVICES, INC. is a domestic business corporation authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Westchester County.

26.     At all relevant times, Defendant JVC No. 5 has retained the services of McGrath

4

Management Services Inc. to manage its multifamily condominium complex.

## STATUTORY SCHEME

27.     Under the Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law, a housing provider is required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

28.     The Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law prohibit housing providers from making notices or statements with respect to a dwelling that indicates a preference, limitation, or discrimination based on disability.

29.     The Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law defines discrimination as a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling.

30.     The FHA prohibits housing providers from placing conditions on the residency of a disabled person because that person requires a reasonable accommodation.  Consequently, if a disabled resident has a disability related need for reasonable accommodation, a housing provider cannot restrict, condition or create an eligibility standard that is more restrictive than the FHA before allowing a disabled resident to have an equal opportunity to use and enjoyment of a condominium unit.

31.     In evaluating whether a person is entitled to a reasonable accommodation under the FHA, a housing provider must only consider 2 factors: a) does the person have a disability related need for the reasonable accommodation; and b) will the accommodation pose an undue financial and administrative burden or require a fundamental alteration in the nature of Defendants'

operations.

32.     If a housing provider fails to reach an agreement on an accommodation, that provider has effectively declined to grant the accommodation.

33.     The FHA also prohibits housing providers from engaging in policies or practices that have an unjustified discriminatory effect, regardless of whether the provider intended to discriminate or not.

34.     Similarly, the New York State Executive [Human Rights] Law prohibits discrimination in the terms, conditions, or privileges of housing; discriminatory notices or statements, denying or withholding housing accommodations because of disability, and discriminatory practices to aid, abet, incite, compel or coerce acts forbidden by the New York State Executive Law.

35.     Likewise, the Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law make it illegal to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any person in the exercise or enjoyment of any right granted under federal, state, and local housing discrimination laws.

36.     To encourage owners of multifamily dwelling complexes to be active supervisors of their subordinates, the Fair Housing Act imposes vicarious liability upon principals or employers for the acts of their agents or employees. Consequently, Defendant JVC No. 5 is legally responsible for the acts, conduct, and statements of its agents- i.e., board members and management company.

6

## FACTUAL BACKGROUND

37.     During all relevant times, Plaintiff Edwina Rance has owned and resided in a condominium unit at Jefferson Village Condominium No. 5.

38.     Ms. Rance has been diagnosed with an anxiety disorder, which impairs her cognition and ability to make rational decisions. Ms. Rance's mental impairment also substantially limits her ability to sleep, take care of herself, or interact with others.

39.     Ms. Rance has had a record of having a mental impairment that substantially limits one or more major life activities.

40.     Since 2016, Ms. Rance has made multiple requests for a reasonable accommodation to permit her son, a person under the age of 55 years old, to reside in her condominium unit. In support of her requests, Ms. Rance has written multiple letters and provided medical opinions of her psychologist and primary physician.

41.     At all relevant times, Ms. Rance has been regarded as having a mental impairment.

42.     At all relevant times, Defendants have had knowledge of Ms. Rance's mental impairment.

43.     Jefferson Village Condominium No. 5 is a multiple family condominium with 57 condominium units.

44.     The bylaws of JVC No. 5 govern the operation of the condominium property and set forth the respective rights and obligations of unit owners.

45.     Pursuant to the bylaws of JVC No. 5, Jefferson Village Condominium No. 5 is operated by a condominium board comprised of board members and President of the board. Board members meet monthly to address and vote on issues related to the operation of the condominium.

The President of the condominium is not a voting member of the condominium board.

46.     From 2006 through 2015, Ms. Rance served on the condominium board of Jefferson Village Condominium No. 5.

47.     From 2008 through 2015, Ms. Rance was the President of the condominium.

48.     During all relevant times, Jefferson Village Condominium No. 5 has been a 55+-year-old community. However, under the bylaws of JVC No. 5, a person under 55 years of age, may reside in a condominium unit provided that the presence of such person is reasonably required for the "physical care or financial support of the older person or persons."

49.     The bylaws of JVC No. 5 clearly do not require an owner of a condominium unit to receive approval or authorization before a person under 55 years of age may reside in the condominium unit whose presence of such person is reasonably required for the physical care or the financial support of the older person or persons. Despite this, the current condominium board has overstepped the bylaws and taken it upon themselves to demand a right to refuse anyone seeking residency in the community under this rule.

50.     The condominium board restricts an owner of a condominium from residing with a person under the age of 55 years of age whose presence is required because of a mental impairment that substantially limits one or more major life activities; has a record of such impairment; or is regarded as having such an impairment.

51.     During all relevant times, Defendants did not have a written or established policy or procedure for requesting reasonable accommodations or modifications.

52.     During all relevant times, Defendants have been aware of their legal responsibility to provide Ms. Rance with a reasonable accommodation to allow her son to reside in her condominium unit.

53.     In 2014, Defendant McGrath Management Services Inc. advised Defendant JVC No. 5 of their collective responsibility under the Fair Housing Act, New York State and local fair housing laws to provide reasonable accommodations to residents who have a mental impairment that substantially limits one or more major life activities, a person who is regarded as having such an impairment, or a person with a record of such an impairment.

54.     In 2014, Defendant McGrath Management Services Inc. advised Defendant JVC No. 5 that reasonable accommodations may include waiving or varying the covenants, conditions and restrictions, or any other relevant policies, to allow the condominium association to make reasonable accommodations that are necessary for an individual property owner with a disability to have an equal opportunity to use and enjoy their unit.

55.     In or about March 2015, Ms. Rance lost her job. Consequently, Ms. Rance advised the condominium board that her the 39-year-old son will reside with her so that he can provide Ms. Rance with financial support. In May 2015, the condominium board acknowledged and approved Ms. Rance's son's residence.

56.     In or about June/July 2015, Ms. Rance began having severe panic attacks and experiencing stress which would overwhelm and debilitate her, along with feelings of losing control, excessive anxiety, worry, and phobias. In addition, Ms. Rance had difficulties falling or staying asleep, and had restless, unsatisfying sleep.

57.     In October 2015, Ms. Rance began seeing a psychologist, Dr. Thomas Eustace, for individual psychotherapy. Since October 7, 2015, Ms. Rance has regularly received treatment from Dr. Eustace.

58.     On November 2, 2016, Defendant McGrath Management Services, on behalf of the Board, stated that Ms. Rance was in violation of the bylaws as a result of her son residing in her

unit. Further, without any legal basis, Defendants claimed that because Ms. Rance's son was less than 55 years of age, his residence "puts the entire Jefferson Village community at risk of suffering a negative impact on [their] tax status."

59.     On November 8, 2016 Ms. Rance requested a reasonable accommodation from Defendants to allow her to reside with her son as a result of her mental impairment. In support of her requests, Ms. Rance provided Defendants with a letter from her psychologist Dr. Eustace.

60.     Dr. Eustace opined that as a result of Ms. Rance's mental impairment it would be unacceptable and detrimental if Ms. Rance resided alone.

61.     On May 5, 2017, Defendant JVC No. 5 rejected the medical opinion of Ms. Rance's psychologist because the board claimed Ms. Rance did not identify her medical condition, or how the presence of her son addresses a need for "physical care" as required by the JVC No. 5 by-laws. The board stated that Ms. Rance's son's residency at Jefferson Village was not permitted because he is under the age of 55 years old. And again, Defendant JVC No. 5 alleged the son's residency places the tax treatment of all unit owners at risk. Consequently, Defendant JVC No. 5 ordered that the son vacate the unit within 30 days.

62.     Additionally, in a transparent attempt to intimidate Ms. Rance, Defendants exceeded its authority under the condominium bylaws and issued an unauthorized and arbitrary fine of $500 per week until Ms. Rance's son moves out.

63.     On or about May 23, 2017, Ms. Rance spoke with Ariana Calderon, the Program Manager of Fair Housing Education and Outreach at WRO, regarding her situation. Ms. Rance explained her prior request for a reasonable accommodation and asked Ms. Calderon to intercede with McGrath Management Services Inc. and JVC No. 5.

64.     On or about May 23, 2017, Ms. Calderon contacted McGrath Management Services

Inc. and asked why Ms. Rance was not provided a reasonable accommodation to allow her son to reside with her. In response, a representative of McGrath Management claimed to have video surveillance demonstrating that Ms. Rance did not have a medical need for a reasonable accommodation.

65.     On May 25, 2017, the condominium board directed Ms. Rance's son to vacate the condominium unit in 7 days.

66.     On or about June 5, 2017, Hannah Gross, an attorney representing Ms. Rance, submitted to the condominium board a letter seeking a reasonable accommodation for Ms. Rance and supported the request with a letter from Ms. Rance's physician, Dr. Rajneesh Uppal. In the letter, Dr. Uppal acknowledged Ms. Rance's anxiety disorder with panic attacks, including a description of how her anxiety increases in the evening.  Consequently, Dr. Uppal opined that the presence of an aide is necessary to help alleviate the symptoms of the anxiety disorder. Additionally, Dr. Uppal stated that because Ms. Rance does not have sufficient resources to hire an aide, her son's presence is a necessity.

67.     In response, Defendant JVC No. 5's attorney, Timothy P. Coon, claimed Ms. Rance failed to provide documentation that her son provided "physical care" for Ms. Rance.

68.     In demonstration of his lack of familiarity with prevailing housing discrimination law, Mr. Coon stated that:

> "[the New York State Executive Law] specifically excludes housing such as Jefferson Village where age restrictions are in place. Therefore, request for accommodations must comply with the bylaws of the condominium."

69.     Beyond the parameters of the federal, state, and local housing discrimination laws, and in a clear effort to interfere, coerce, intimidate and discriminate against Ms. Rance, Mr. Coon said the board is willing to consider Ms. Rance's requests for a reasonable accommodation only if

she agrees to provide him, on behalf of the board, with the complete medical records from her physicians.

70.      On October 20, 2017, in another transparent attempt to interfere, coerce, intimidate and discriminate against Ms. Rance, Defendant McGrath Management Services Inc. willfully mislabeled the board's aforementioned unauthorized fines as common charges, and pursuant to the condominium bylaws, threatened foreclosure and/or placing a lien on the condominium unit, along with legal action to collect outstanding common charges.

71.      On or about December 5, 2017, Ms. Rance again contacted WRO regarding her situation, and spoke with Ms. Andrea Vargas, Fair Housing Investigator, and Mr. Cooper Sirwatka, then Fair Housing Program Coordinator. After discussing her situation, Mr. Sirwatka assisted Ms. Rance in drafting another letter to Defendants.

72.      On December 13, 2017, Ms. Rance submitted a letter to Defendants stating that while the bylaws only permit Ms. Rance's son to live in her unit for financial or physical health reasons, the federal, state, and local housing discrimination laws permit reasonable accommodations for mental health disabilities. Further, Ms. Rance stated that her mental impairment substantially limits one or more major life activities.

73.      On June 11, 2018, Ms. Rance received a Notice of Lien for alleged unpaid "common charges" in the amount of $20,499.40 plus interest.

74.      At no time has Ms. Rance violated the bylaws of Defendant JVC No. 5.

75.      Ms. Rance has always timely paid her common charges.

76.      Defendants acted with willful misconduct and bad faith.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
**(Violations of the Fair Housing Act, 42 USC 3604 *et seq*.)**

77.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

78.     During all relevant times, Ms. Rance is a person with a disability defined in 42 U.S.C. § 3602(h).

79.     Plaintiffs are "aggrieved persons" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

80.     The condominium complex of Defendant JVC No. 5 is a covered multifamily dwelling located in Yorktown Heights, New York, and contains four or more units. As such, it is a covered multifamily dwelling as defined in U.S.C. § § 3604(f)(7).

81.     Upon information and belief, Defendant JVC No. 5 entered into an agreement with Defendant McGrath Management Service, Inc. acknowledging both entities would comply with all relevant laws, rules and regulations associated with housing discrimination.

82.     Defendants have made or caused to be made, printed, or published any notice, or statements, with respect to a dwelling that indicate a preference, limitation, or discrimination based on disability, or an intention to make any such preference, limitation or discrimination in violation of 42 U.S.C. § 3604(c).

83.     Defendants have discriminated against Ms. Rance in the terms, conditions, or privileges of her dwelling, or in the provision of services or facilities in connection with such dwelling because of disability in violation of 42 U.S.C. § 3604(f)(2).

84.     The reasonable accommodation needed by Ms. Rance is necessary to afford her full enjoyment of her condominium unit.

85.     The reasonable accommodation requested by Ms. Rance does not fundamentally alter the nature of the program, activity, or service, or cause an undue financial and administrative burden.

86.     Defendants have discriminated against Ms. Rance by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodation is necessary to afford Ms. Rance equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

87.     Defendants have pursued their discriminatory practices for the purpose of excluding individuals with mental disabilities from residing at Defendant's multifamily condominium dwelling.

88.     As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Ms. Rance has been injured and has suffered actual and economic damages, including but not limited to lost housing opportunity.

89.     As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Ms. Rance has suffered and continues to suffer mental anguish and severe emotional distress, including but not limited to anxiety, panic attacks, depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering

90.     As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, WRO has been injured by Defendants' discriminatory conduct and statements, and has suffered damages, including diversion of resources and frustration of mission, as a consequence of Defendants' conduct.

91.     Defendants discriminatory actions were intentional, willful, and with reckless

14

disregard for the rights of the Plaintiffs. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to punitive damages.

**SECOND CAUSE OF ACTION**
**(Disparate Impact in Violation of the Fair Housing Act)**

92.     Plaintiffs reallege and incorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

93.     Defendants' policy of restricting requests for reasonable accommodation to persons who require physical care or financial support is unjustifiable and has a disparate impact against disabled persons with mental impairment.

94.     Defendants' discriminatory practices have the effect of excluding disabled persons with mental disabilities from residing at Defendant's multifamily condominium dwelling.

95.     Defendants' practice has a disparate impact against persons with mental impairments, in violation of the Fair Housing Act.

96.     As a direct and proximate result of Defendants' disparate impact, Ms. Rance has been injured and has suffered actual and economic damages, including but not limited to lost housing opportunity.

97.     As a direct and proximate result of Defendants' disparate impact, Ms. Rance has suffered and continues to suffer mental anguish and severe emotional distress, including but not limited to anxiety, panic attacks, depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

98.     As a direct and proximate result of Defendants' disparate impact, WRO has suffered

damages, including diversion of resources and frustration of mission.

99.     Defendants knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction.

### THIRD CAUSE OF ACTION
**(Coercion, Intimidation, Threaten, and Interference in Violation of 42 U.S.C. § 3617)**

100.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

101.    The conduct of Defendants constitutes coercion, intimidation, threaten, and interference with Ms. Rance in the exercise or enjoyment of, or on account of, Ms. Rance having exercised or enjoyed any right granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

102.    As a direct and proximate result of Defendants' unlawful discrimination in violation of 42 U.S.C. § 3617, WRO has suffered damages, including diversion of resources and frustration of mission.

103.    As a direct and proximate result of Defendants' unlawful discrimination in violation of 42 U.S.C. § 3617, Ms. Rance has been injured and has suffered actual and economic damages, including but not limited to lost housing opportunity.

104.    As a direct and proximate result of Defendants' unlawful discrimination in violation of 42 U.S.C. § 3617, Ms. Rance has suffered and continues to suffer mental anguish and severe emotional distress, including but not limited to anxiety, panic attacks, depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

105.    Defendants discriminatory actions were intentional, willful, and with reckless disregard for the rights of Ms. Rance. Defendants knew of or ratified the discriminatory acts of its

agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, Plaintiffs are entitled to punitive damages.

## FOURTH CAUSE OF ACTION
### (Violation of New York State Executive [Human Rights] Law)

106.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

107.    Plaintiffs and Defendants are "persons" as defined in New York State Executive Law § 292(1).

108.    Ms. Rance's condominium unit located in Yorktown Heights, New York, is a "housing accommodation" as defined in New York State Executive Law § 292(10).

109.    Defendant's multifamily dwelling located in Yorktown Heights, New York, contains three or more separate housing accommodations.

110.    Defendant's multifamily dwelling located in Yorktown Heights, New York, is a "multifamily dwelling" as defined in New York State Executive Law § 292(12).

111.    Plaintiff Edwina Rance has a disability as defined in New York State Executive Law § 292(21).

112.    Defendants have otherwise denied to or withheld from Ms. Rance such a housing accommodation because of disability in violation of New York State Executive Law §§ 296(5)(a)(1) and 296(5)(b)(1).

113.    Defendants have discriminated against Ms. Rance, on the basis of disability, in the terms, conditions or privileges of such housing accommodation or in the furnishing of facilities or services in connection therewith in violation of New York State Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

114.    Defendants have printed or circulated or caused to be printed or circulated any statement or publication which has expressed, directly or indirectly, any limitation, specification or discrimination as to disability, or any intent to make any such limitation, specification or discrimination in violation of New York State Executive Law §§ 296(5)(a)(3) and 296(5)(b)(3).

115.    Defendants have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under New York State Executive Law, or attempted to do so in violation of New York State Executive Law § 296(6).

116.    Defendants have retaliated or discriminated against Ms. Rance because she has opposed any practices forbidden under New York State Executive Law in violation of New York State Executive Law § 296(7).

117.    Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations are necessary to afford Ms. Rance equal opportunity to use and enjoy a dwelling, in violation of New York State Executive Law § 296(18)(2).

118.    As a direct and proximate result of Defendants' unlawful discrimination in violation of New York State Executive Law, Ms. Rance has been injured and has suffered actual and economic damages, including but not limited to lost housing opportunity.

119.    As a direct and proximate result of Defendants' unlawful discrimination in violation of New York State Executive Law, Ms. Rance has suffered and continues to suffer mental anguish and severe emotional distress, including but not limited to anxiety, panic attacks, depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

120.    As a direct and proximate result of Defendants' unlawful discrimination in violation

of the New York State Executive Law, WRO has suffered damages, including diversion of resources and frustration of mission.

121.    Defendants' discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of the Plaintiff.  Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, pursuant to New York Executive Law § 297(10), Plaintiffs are entitled to punitive damages.

**FIFTH CAUSE OF ACTION**
**(Violations of Westchester County Fair Housing Law)**

122.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

123.    Plaintiff Edwina Rance has a disability as defined in Westchester County Fair Housing Law § 700.20(D).

124.    Plaintiffs are "persons" as defined in Westchester County Fair Housing Law § 700.20(O).

125.    Defendants JEFFERSON VILLAGE CONDOMINIUM NO. 5 and MCGRATH MANAGEMENT SERVICES INC. are "persons in the business of selling or renting housing accommodations" as defined in Westchester County Fair Housing Law § 700.20(P).

126.    The condominium unit owned by Ms. Rance is a "housing accommodation" as defined in Westchester County Fair Housing Law § 700.20(I).

127.    Defendant's multifamily dwelling located in Yorktown Heights, New York contains three or more units.

128.    Defendant's multifamily dwelling, located in Yorktown Heights, New York, is a "multifamily dwellings" as defined in Westchester County Fair Housing Law § 700.20(J).

19

129.    Defendants have refused to rent, lease, negotiate for, or refused to approve or enter into a transaction involving or otherwise to denied to or withheld from any person or group of persons, or refused to continue to rent, lease, sublease or otherwise denied to or withheld from any person or group of persons, such a housing accommodation because of Ms. Rance's disability in violation of Westchester County Fair Housing Law § 700.21(A)(2).

130.    Defendants have discriminated against Ms. Rance because of her actual or perceived disability in the terms, conditions, or privileges of a transaction involving any such housing accommodation in violation of Westchester County Fair Housing Law § 700.21(A)(3).

131.    Defendants have discriminated against Ms. Rance because of her actual or perceived disability in the furnishing of facilities or services associated with such housing accommodations or the use or enjoyment in connection therewith in violation of Westchester County Fair Housing Law § 700.21(A)(4).

132.    Defendants have made, declared, printed, published, or circulated or caused to be made, declared, printed, published, or circulated any notice, statement, or, with respect to the transaction of any such housing accommodations which expresses or indicates, directly or indirectly, any preference, limitation, specification, or discrimination as to a person's disability or any intent to make any such preference, limitation, specification, or discrimination in violation of Westchester County Fair Housing Law § 700.21(A)(5).

133.    Defendants have refused to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford Ms. Rance, a person with a disability, equal opportunity to use and enjoy a housing accommodation in violation of Westchester County Fair Housing Law § 700.21(A)(9)(c)(ii).

134.    Defendants have coerced, intimidated, threatened or interfered with Ms. Rance in

the exercise of, or on account of that person having aided or encouraged any other person in the exercise of, any right granted under the local housing discrimination laws in violation of Westchester County Fair Housing Law § 700.21(A)(10).

135.    As a direct and proximate result of Defendants' discriminatory conduct in violation of Westchester County Fair Housing Law, Ms. Rance has been injured and has suffered actual and economic damages, including but not limited to lost housing opportunity.

136.    As a direct and proximate result of Defendants' discriminatory conduct in violation of Westchester County Fair Housing Law, Ms. Rance has suffered and continues to suffer mental anguish and severe emotional distress, including but not limited to anxiety, panic attacks, depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

137.    As a direct and proximate result of Defendants' unlawful discrimination in violation of Westchester County Fair Housing Law, WRO has suffered damages, including diversion of resources and frustration of mission.

138.    Defendants' discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiff.  Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under Westchester County Fair Housing Law § 700.29(A)(4), Plaintiffs are entitled to punitive damages.

## SIXTH CAUSE OF ACTION
### (Declaratory Relief)

139.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

140.    Plaintiffs are entitled to a declaratory judgment concerning the violations

committed by Defendants specifying the rights of Plaintiffs and other persons similarly situated as to the policies, practices, procedures, facilities, goods and services provided by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

A.      Plaintiffs seek a restraining order preventing Defendants from acting upon their wrongfully filed Notice of Lien, to cease and desist the making of unauthorized and arbitrary fines, as well as their continual intimidation, retaliation, coercion, interference, and discrimination in violation of the Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law.

B.      Plaintiffs seek declaratory judgment, declaring that the conduct of Defendants constitutes violations of the Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law.

C.      Defendants and its agents, employees, and successors, and all other persons in active concert or participation be permanently enjoined from discriminating on the basis of disability, and disparate impact, including an injunction prohibiting the following:

i.      Disability discrimination in violation of the Fair Housing Act Amendments, New York State Executive Law, and Westchester County Fair Housing Law;

ii.     Housing discrimination based on disability;

iii.    Making notices or statements that indicate a preference, limitation, or discrimination based on disability;

iv.     Inferior terms, conditions, or privileges of a dwelling because of disability;

22

v.      Aiding, abetting, coercing, intimidating, interfering, and discriminating based on disability;

vi.     Refusing to make reasonable accommodation to Ms. Rance;

vii.    Making unauthorized and arbitrary fines;

viii.   Making statements declaring that Defendants are exempted from the federal, state, and local housing discrimination laws as it relates to housing discrimination and reasonable accommodation.

D.      Permanent injunction requiring Defendants to:

i.      Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

ii.     Modify the condominium bylaws to state persons with a mental or physical impairment which substantially limits a major life function are entitled to reasonable accommodation;

iii.    Train all board members, management, agents, and employees on fair housing laws;

iv.     Withdraw the Notice of Lien and make remediations as to Plaintiff Edwina Rance's credit.

E.      Have the court retain jurisdiction over the Defendants until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

F.      Award such damages to Plaintiffs to compensate for the injuries caused by Defendants' unlawful discrimination and disparate impact in violation of the Fair Housing Act;

G.      Award such damages to Plaintiffs to compensate for the injuries caused by Defendants' unlawful practices in violation of New York State Executive Law;

H.      Award such damages to Plaintiffs for injuries caused by Defendants' unlawful practices in violation of Westchester County Fair Housing Law,

I.      Award punitive damages to Plaintiffs for Defendants' violation of the Fair Housing Act, New York State Executive Law, and Westchester County Fair Housing Law;

J.      Award Plaintiffs reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

K.      Grant Plaintiffs such other further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

Dated: July 30, 2018

> **LAW OFFICES OF JAMES E. BAHAMONDE, P.C.**
>
> By: _____
> James E. Bahamonde
> 2501 Jody Court
> North Bellmore, NY 11710-1940
> Tel. (646) 290-8258
> James@CivilRightsNY.com
>
> *Attorneys for Plaintiffs*

24